WILLIAM M. AFFLICK et al., Appellants, v. ROBERT STREETER, Respondent.

### Kansas City Court of Appeals, June 3, 1907.

1. **SALES: Warranty.** A warranty in the sale of personal property is a statement of fact made by the vendor as to the character or quality of the article sold whereby he promises that the thing is or shall be as represented.

2. ———: **Personal Contract: Assignability: Waiver: Jury.** Where a contract of sale is one of personal confidence and trust it may not be assigned by one party without the other's consent, but such right may be waived, which is a question for the jury.

3. ———: **Vendor's Waiver of Contract Provision: Jury.** Defendant sold certain hogs to the plaintiffs and warranted they would bring a certain price on the market. Plaintiffs sold the hogs to R. The market in the original contract was the St. Louis market. R sold them on the Chicago market. *Held*, if defendant consented that the hogs might be shipped to Chicago he waived his right under the contract and such waiver was a question for the jury.

4. ———: **Warranty: Time of Shipment: Waiver.** A contract contemplated a shipment and sale in September. The shipment did not occur until October. If the market declined this was prejudicial to the vendor but it was a matter he could waive and his waiver was a question for the jury.

Appeal from Boone Circuit Court.—*Hon. E. W. Hinton, Special Judge.*

REVERSED AND REMANDED.

*Thos. J. Tydings* and *Jas. P. Boyd* for appellants.

(1)   The buyer of live stock is entitled and has a right to rely upon statements made by the seller concerning the condition of the animal and to treat such statements as warranties where they are not obviously mere expressions of opinion or dealers talk.   30 Am. and Eng. Ency. Law (2 Ed.), 156; Brauson v. Turner, 77 Mo. 489.   (2)   Appellants have a complete remedy by suing for damages after the purchase money has been paid.   Kerr v. Emerson, 64 Mo. App. 159 and cases cited. (3)   Upon any theory, the plaintiffs were entitled to recover the amount the hogs were docked on account of pregnancy, and the evidence shows that there were seven sows, docked forty pounds each.   Twohey v. Fruin, 96 Mo. 104.   (4)   It is a constitutional right of every litigant, when he has offered substantial evidence tending to prove his case, to have the probative force of his evidence determined by the jury; and, for the purpose of deciding whether there is substantial evidence to submit to the jury, his testimony should be taken as true and every reasonable inference therefrom in his favor should be made.   Ladd v. Williams, 104 Mo. App. 390. The contract in this case being oral and the terms, especially as to the agreement to pay for the docks on market being controverted, its construction was for the jury.   Norton v. Higbee, 38 Mo. App. 467; Davies v. Baldwin, 66 Mo. App. 580.

*P. H. Cullen* and *Arthur Bruton* for respondent.

(1)   The contract here sued upon is a contract of indemnity to reimburse one for a loss, not a contract of warranty as to either title, equity, or quantity of the thing sold.   James v. Libby, 44 Misc. 210, 88 N. Y. S. 812; Brewster v. Countryman, 12 Wend. (N. Y.) 446; Fisher v. Saylor, 78 Pa. St. 84; 22 Enc., "Indemnity," p. 78, etc.; 18 Am. and Eng. Ency. Law (2 Ed.), 167.   (2)   A recovery cannot be had by an indemnitee

who has not performed his covenant which by the terms of the contract is a condition precedent to any liability on the part of the indemnitor. Winton v. Meeker, 25 Conn. 456; Manufacturing Co. v. Hart, 40 Mo. App. 512; Rogers v. Kimball, 121 Calif. 247; Conn. v. Jones, 99 Ga. 608; Pioneer Savings v. Freeburg, 59 Minn. 230, 61 N. W. 25; O'Connell v. Railroad, 187 Mass. 272, 72 N. E. 979. (3) Plaintiff's rights arising out of the contract sued upon are coupled with liabilities, and involve a relation of personal confidence and are such that Streeter, whose agreement conferred those rights, must have intended to be exercised by the plaintiffs and not by their assignor. Butts v. McMurry, 74 Mo. App. 530; Smelting Co. v. Belden, 127 U. S. 387; Rappleye v. Racine Seeder (Ia.), 7 L. R. A. 142; Boykin v. Campbell, 9 Mo. App. 495; Implement Co. v. Iron Works, 129 Mo. 233; Redheffer v. Leathe, 15 Mo. App. 12; Humble v. Hunter, 12 Q. B. 317; Winchester v. Howard, 97 Mass. 305; Boston Ice Co. v. Potter, 123 Mass. 28; King v. Batterson, 13 R. I. 120; Lansden v. McCarthy, 45 Mo. 106.

BROADDUS, P. J.—This suit was begun in the justice court, whence it was taken by appeal to the circuit court where judgment was rendered for defendant, from which plaintiffs appealed.

The statement of plaintiff's cause of action is substantially as follows. In August, 1905, plaintiffs purchased from defendant a carload of hogs at the price of $5.75 cwt. to be delivered in the following month of September. That defendant represented that the hogs were of the kind and description that would sell within ten cents of the highest market price any hogs would be sold for on the market on the days said hogs would be sold. And that he agreed that if the hogs failed to sell within the price named when they were

sold, he would refund to plaintiffs the difference between what the hogs actually sold for and the highest market price for hogs sold on the same day. That defendant further agreed that in the event any of the hogs were docked on account of pregnancy, or on account of having been males and used for breeding purposes, he would pay the amount of such "dock." The statement then alleges that plaintiffs relying upon defendant's representations and without having ever seen said hogs, on or about the —— day of ——, 1905, sold said hogs under a similar agreement except as to price to one, John Rumans, and that on the twenty-eighth of September defendant delivered the hogs to plaintiffs at Sturgeon, Missouri, and they at once delivered them to the said Rumans, who with the knowledge and consent of defendant at once shipped them to Chicago, and sold them on the market at that place.

Plaintiffs allege that said hogs were not of such kind and quality that they would sell at the price represented; that they were inferior in kind and quality; that some of them were pregnant and were docked forty pounds each when sold on the market; that they were sold at less price per cwt. than that named; that plaintiffs settled with said Rumans and paid him the difference in price received and that which defendant represented they would bring, and also paid him for the loss sustained by reason of said seven hogs having been docked. They ask judgment for the amount of the sum paid said Rumans on said settlement.

The plaintiffs introduced evidence tending to show the following state of facts. That on the day stated they purchased from defendant a carload of hogs at the price named; that plaintiffs had never seen the hogs at the time of their purchase; that defendant said they would be nice, straight hogs, none of which would be subject to "dock;" that they would be good enough to bring within the price already mentioned; that if they

did not he would pay the difference and would pay all "dock;" that plaintiffs resold the hogs to said Rumans as stated; that they notified defendant that they had sold the hogs to Rumans; that defendant made no objection to the sale; that Rumans after he bought the hogs had a conversation with defendant by telephone in which the latter stated that he was to make the hogs bring the price within ten cents of the top of the market and wanted Rumans to settle with him without shipping the hogs; and that the latter told him he was going to ship the hogs to Chicago and defendant made no objection.

A witness named Snell, who was acting as agent for plaintiffs, testified that before he paid for the hogs defendant discussed the question as to how many of them would be subject to "dock;" that they could not agree about the matter; and that defendant agreed to let the hogs be shipped and to settle the "dock" as reported from the market. Snell further testified that before he paid for the hogs defendant asked him if Rumans was going to Chicago, and that he told him such was the intention and "if that has anything to do with the settlement, say so now, if not, I will settle for the hogs in full, and you can pay back the amount of the dock and he accepted the settlement."

Upon the showing of plaintiffs the court directed the jury to return a verdict for defendant. The plaintiffs contend that the action of the court was error. In our opinion, plaintiffs made out a prima facie case of warranty. The defendant's representations were that the hogs should be of a certain kind and quality and that they should be as represented. "A warranty, in a sale of personal property, is a statement or representation of fact made by the vendor as to the character or quality of the article sold or the title thereto, whereby the vendor promises that the thing is, or shall be, as represented. It is otherwise defined as a statement of

fact as to the article sold, coupled with an agreement to make the statement good." [Ingraham v. Rice, 19 R. I. 356; Words and Phrases, p. 7402.]

But defendant contends that the contract of sale being executory and personal, was not assignable. In Lansden v. McCarthy, 45 Mo. 106, was a case where the defendant entered into a written contract with plaintiff's assignors, by which he agreed to furnish them at their hotel all the fresh beef, pork and mutton that they might order or require for consumption for one year at ten cents per pound, etc. The plaintiffs became the proprietors of the hotel and took an assignment of the contract. Defendants refused to supply them with the meats mentioned. The court held that he was not bound to do so, as the contract was not assignable without the consent and concurrence of defendant, for the reason that it involved a matter of trust and confidence in the plaintiff's assignors. That is to say, defendant may have had a personal confidence in the assignors that he did not have in the plaintiffs. In Hardy Implement Co. v. Iron Works, 129 Mo. 222, the Missouri decisions were reviewed and the holding in Lansden v. McCarthy, was expressly approved. If the case at bar be construed to be one of personal confidence and trust, still the plaintiffs had the right to have their case submitted to the jury under the rule in the above cases for the reason that the evidence went to show that the hogs were sold by plaintiffs to Rumans under the same conditions and stipulations governing the sale to plaintiffs and that defendant consented to and concurred in such sale and received the money for the hogs from plaintiff's agent.

It is necessary, however, to call attention to defendant's side of the case. It is insisted that the contract contemplated that the hogs should be shipped and sold on the St. Louis market. There was evidence to the effect that hogs in the vicinity of Sturgeon shipped to be sold on the market were generally understood to be

sold on the St. Louis market, and that such market was better than the Chicago market. Notwithstanding such was defendant's evidence as to the market provided for in the contract, if defendant consented that the hogs might be shipped and sold on the Chicago market, he waived that provision of his contract. It was for the jury to say whether he had or not.

Defendant's version of the contract is somewhat different from that of plaintiffs, viz.: his statement was that he said to plaintiffs, *"You* take the hogs and *ship* them and I will stand behind them." Although the evidence tends to show that defendant's contract with plaintiffs was one of personal trust and confidence, yet under the authorities referred to, it was a matter which he could waive, and, as stated, the evidence tends to show that he did waive that matter.

It may be assumed that the contract, properly interpreted, provided that the hogs were to be shipped in the month of September. They were not shipped until the second day of October. If the market for such quality of hogs declined in the meantime the delay was to defendant's prejudice and he ought not to be held to a strict performance of the contract without he waived that matter. There is some evidence that he did waive the time of shipment which was a matter for the jury.

And if defendant's version of the contract be true, that plaintiff's were to take the hogs to the market and sell them, his consent that plaintiffs' vendee might take the hogs on the same terms, imposed a like obligation upon Rumans also. Perhaps it might be immaterial as a matter of fact whether the purchaser accompanied the hogs to market and superintended their sale there. It is not a matter of which we can take judicial cognizance, yet it was a matter of contract, and defendant had a right to stand on his contract. The evidence is not clear that defendant was present and consented to the delay in the shipment of the hogs to the market on the

second day of October, and, if he did not, plaintiffs failed to make out their case.

We think the case was one for the jury. Reversed and remanded. All concur.